### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF LOUISIANA
### LAKE CHARLES DIVISION

| | | |
|---|---|---|
| VERONICA HAMPTON and SERGIO HERNANDEZ, on behalf of themselves and all others similarly situated, | §<br>§<br>§<br>§<br>§ | |
| | § | **CIVIL ACTION NO.:** |
| Plaintiffs, | § | |
| v. | §<br>§ | |
| | § | **JURY TRIAL DEMANDED** |
| MCDERMOTT INTERNATIONAL, INC.; and CHICAGO BRIDGE & IRON, CO., | §<br>§<br>§ | |
| Defendants. | § | |

## COMPLAINT

Plaintiffs VERONICA HAMPTON ("Hampton") and SERGIO HERNANDEZ ("Hernandez"), on behalf of themselves and all others similarly situated, by and through their attorneys, bring this action for damages and other legal and equitable relief from Defendants MCDERMOTT INTERNATIONAL, INC. ("McDermott") and CHICAGO BRIDGE & IRON CO. ("CB&I"), (collectively, "Defendants"), for violations of the Fair Labor Standards Act ("FLSA"), as amended, 29 U.S.C. §§ 201 *et seq*. and any other cause(s) of action that can be inferred from the facts set forth herein.

## INTRODUCTION

1.      This is a collective/class action brought by Plaintiffs challenging acts committed by Defendants against Plaintiffs and those similarly situated, which amount to violations of federal and state wage and hour laws.

2.      Defendants employed Plaintiffs and all those similarly situated in a variety of positions ranging from Forklift Operators to Pipe Fitter Helpers (collectively, "Laborers") at the Cameron LNG Project, a liquified natural gas facility being constructed at or near 301 Main Street, Hackberry, LA 70645.

3.      Plaintiffs bring this action on behalf of themselves, and those similarly situated, as a result of Defendants' violation of federal wage and hour laws, as set forth herein.

4.      Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b), on behalf of themselves and a collective of persons who are and were employed by Defendants during the past three (3) years through the final date of the disposition of this action who were not paid the statutorily required rate of one and a half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek and are entitled to recover: (i) unpaid and incorrectly paid wages for all hours worked in a workweek, as required by law, (ii) unpaid overtime, (iii) liquidated damages, (iv) interest, (v) attorneys' fees and costs, and (vi) such other and further relief as this Court finds necessary and proper.

5.      Defendants violated the FLSA by requiring Laborers to work "off-the-clock" while being transported by Defendants' mandatory transportation system and before the start of their scheduled shifts. By requiring Plaintiffs and all those similarly situated to work "off-the-clock," Defendants deprived them of the statutorily required overtime premium of one and a half (1 ½) their regular hourly rate for all hours worked in excess of forty (40) hours per workweek.

6.      On or about February 13, 2019, Defendant McDermott issued a press release that it expected to report an adverse change in estimate for its Q4 2018 revenue of approximately $168 million, which it says is due to "unfavorable labor productivity and increases in subcontract, commissioning and construction management costs" at the Cameron LNG project.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress providing for the protection

**ORIGINAL COMPLAINT**

of civil rights; (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201; and (iii) under 29 U.S.C. §§ 201 *et seq*.

8.      Venue is proper in this Court pursuant to 29 U.S.C. §§ 201-219 in as much as the unlawful employment practices occurred in this judicial district. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (c), in that Defendants maintain offices, conduct business and reside in this district.

## THE PARTIES

9.      Plaintiff Hampton is a citizen of Alabama and resides in Choctaw County, Alabama.

10.     At all relevant times, Plaintiff Hampton was an employee of Defendants within the meaning of the FLSA.

11.     Plaintiff Hernandez is a citizen of Texas and resides in Harris County, Texas.

12.     At all relevant times, Plaintiff Hernandez was an employee of Defendants within the meaning of the FLSA.

13.     Defendant McDermott is a corporation, which is incorporated in Panama and headquartered in Houston, Texas.

14.     Defendant McDermott conducts business in the State of Louisiana.

15.     Defendant McDermott transacted and continues to transact business within Louisiana by formerly and currently employing individuals within Louisiana and by owning and operating facilities within Louisiana.

16.     Upon information and belief, the amount of qualifying annual volume of business for Defendant McDermott exceeds $500,000.00 and thus subjects Defendant McDermott to the FLSA.

17.     Upon information and belief, Defendant McDermott is engaged in interstate commerce.  This independently subjects Defendant McDermott to the FLSA.

**ORIGINAL COMPLAINT**

18.     Defendant McDermott has at all relevant times been an employer covered by the FLSA.

19.     Defendant CB&I is a corporation, which is headquartered in The Woodlands, Texas..

20.     Defendant CB&I conducts business in the State of Louisiana.

21.     Defendant CB&I transacted and continues to transact business within Louisiana by formerly and currently employing individuals within Louisiana and by owning and operating facilities within Louisiana.

22.     Upon information and belief, the amount of qualifying annual volume of business for Defendant CB&I exceeds $500,000.00 and thus subjects Defendant CB&I to the FLSA.

23.     Upon information and belief, Defendant CB&I is engaged in interstate commerce.  This independently subjects Defendant CB&I to the FLSA.

24.     Defendant CB&I has at all relevant times been an employer covered by the FLSA.

25.     In or around May 2018, Defendant McDermott merged with Defendant CB&I.

26.     Defendants jointly employed Plaintiffs and similarly situated employees, employing or acting in the interest of the employer towards Plaintiffs and similarly situated employees directly or indirectly, jointly or severally, including without limitation, by controlling and directing the terms of employment and compensation, by formulating and implementing policies, hiring and/or firing Plaintiffs and similarly situated employees, by creating work schedules, and by suffering Plaintiffs, and all those similarly situated employees, to work.

## STATEMENT OF FACTS

### I.     Facts Common to All Laborers

27.     Throughout the relevant time period, Plaintiffs were employed by Defendants at the Cameron LNG Liquefaction Project ("Worksite"), located at or near 301 Main Street, Hackberry, LA 70645.

**ORIGINAL COMPLAINT**

4

28.     Laborers are paid on an hourly basis and not on a salary or fee basis. Laborers also earn a *per diem* rate of pay in addition to their hourly rate.

29.     Laborers' job duties are blue collar in nature as they performed various construction-related manual work at the Worksite, which ranges from operating a fork lift to pipe fitting.

30.     Laborers do not have the power to hire, fire, or discipline other employees, nor did they have the authority to make such recommendations.

31.     Laborers are not exempt from the statutory provisions of the FLSA.

32.     Laborers are issued checks weekly from Defendants' headquarters in Houston, Texas.

33.     Upon information and belief, Laborers' payroll is processed at Defendants' headquarters in Houston, Texas.

34.     Laborers are scheduled approximately seven (7) shifts per workweek. The duration of each shift is approximately twelve (12) hours. Accordingly, Laborers are scheduled to work approximately eighty-four (84) hours per workweek. As stated below, however, Laborers work more hours than they are scheduled.

35.     Laborers are required to clock-in and clock-out at turnstiles by using their identification badges.

36.     Laborers are required to arrive and depart from the Worksite via Defendants' mandatory transportation system. The mandatory bus rides range anywhere from twenty (20) minutes to several hours.

37.     Laborers are required to participate in work related meetings with their Crew Leaders during these bus rides. These meetings concern the daily work assignments and their method of completion.

**ORIGINAL COMPLAINT**

38.     Laborers are also required to answer work related telephone calls during the bus ride to the worksite.

39.     Laborers are not compensated for any time spent discussing/planning their daily work while on Defendants' buses.

40.     Laborers often arrive at the Worksite before their scheduled shift begins because of Defendants' mandatory transportation system.

41.     After initially clocking in at a turnstile, Laborers are required to immediately begin performing their regular job duties. Defendants' supervisors commonly referred to this work as "prestart" work.

42.     The "prestart" work and work performed on the bus is for the primary benefit of Defendants and was not incidental to the Laborers' job duties.

43.     Laborers are only paid for time worked after their scheduled shift begins.

44.     Although Laborers clock-in before their scheduled shifts at a turnstile, Defendants' computerized time recording system automatically records their start time as their scheduled shift time, not the actual time their work begins. Accordingly, Laborers are only compensated for their scheduled shift hours and not for their compensable "prestart" work and the time spent working on the bus.

45.     Defendants have knowledge that Laborers perform compensable work during their commute to the worksite and prior to the start of their scheduled shift.

46.     Thus, Laborers work more than their scheduled eighty-four (84) hours per workweek as Defendants require them to work "off-the-clock."

47.     The aforementioned "off-the-clock" work is compensable at the overtime rate as Laborers' "on-the-clock" work was always in excess of forty (40) hours per workweek.

**ORIGINAL COMPLAINT**

48.     Laborers are unlawfully only compensated the overtime premium for "on-the-clock" hours worked over forty (40) per workweek.

49.     As a result of being forced to work "off-the-clock" Laborers are not compensated the statutorily required overtime premium of one and a half (1 ½) times their regular hourly rate for all hours worked in excess of forty (40) hours per workweek in violation of the FLSA.

## II.     Facts Pertaining to Plaintiff Hampton

50.     In or around March 2017, Plaintiff Hampton began her employment with Defendants as a Forklift Operator at Defendants' Worksite.

51.     Plaintiff Hampton is a current employee of Defendants.

52.     As a Forklift Operator, Plaintiff Hampton's job duties include loading and unloading trucks and moving pallets.

53.     Plaintiff Hampton is typically scheduled to work approximately seven (7) twelve (12) hour shifts per workweek.

54.     Plaintiff Hampton is compensated on an hourly basis of $30.00 per hour.

55.     Plaintiff Hampton is also compensated an additional $96.00 per workday as *per diem* pay.

56.     Plaintiff Hampton is required to arrive and depart from the Worksite via Defendants' mandatory transportation system.

57.     Plaintiff Hampton's shift typically starts at 6:00 a.m.

58.     During the bus ride to the Worksite, Plaintiff Hampton is required to meet with her Crew Leader to discuss the day's work and plan its method of completion.

59.     Because of Defendants' mandatory transportation system, Plaintiff Hampton often arrives at the Worksite at 5:30 a.m.

**ORIGINAL COMPLAINT**

60.     Plaintiff Hampton is required to clock-in at the turnstiles immediately upon her arrival at the Worksite.

61.     Before her shift begins at 6:00 a.m., Plaintiff Hampton is required to complete paperwork concerning her daily work assignments and inspect the machines, both of which are a part of her normal job duties.

62.     Defendants have knowledge that Plaintiff Hampton performs her normal job duties prior the commencement of her scheduled shift.

63.     Plaintiff Hampton is not compensated for her time spent working on the bus and for her "prestart" work.

64.     Accordingly, Plaintiff Hampton is required to work "off-the-clock."

65.     The "off-the-clock" work performed by Plaintiff Hampton was not incidental to her job duties.

66.     As a result of being forced to work "off-the-clock" Plaintiff Hampton works more than her scheduled eighty-four (84) hours per workweek.

67.     Plaintiff Hampton is unlawfully only compensated the overtime premium for her "on-the-clock" hours worked over forty (40) per workweek.

68.     As a result of being forced to work "off-the-clock," Plaintiff Hampton does not receive the overtime premium of one and a half (1 ½) times her regular hourly rate for all hours worked in excess of forty (40) hours per workweek in violation of the FLSA.

### III.     Facts Pertaining to Plaintiff Hernandez

69.     In or around April 2018, Plaintiff Hernandez began his employment with Defendants as a Pipe Fitter Helper at Defendants' Worksite.

**ORIGINAL COMPLAINT**

70.     In or around February 2019, Plaintiff Hernandez's employment with Defendants concluded.

71.     As a Pipe Fitter Helper, Plaintiff Hernandez's job duties included assisting the Pipe Fitter by bringing him/her tools and by adjusting and holding the pipes.

72.     Plaintiff Hernandez was typically scheduled to work six (6) twelve (12) hour shifts per workweek.

73.     Plaintiff Hernandez was compensated on an hourly basis of $25.50 per hour.

74.     Plaintiff Hernandez was also compensated additional $96.00 per workday as *per diem* pay.

75.     Plaintiff Hernandez was required to arrive and depart from the Worksite via Defendants' mandatory transportation system.

76.     During the bus ride to the worksite, Plaintiff Hernandez is required to meet with his Crew Leader to discuss the day's work and plan its method of completion.

77.     Plaintiff Hernandez's shift typically started at 7:30 a.m.

78.     Because of Defendant's mandatory transportation system, Plaintiff Hernandez often arrived at the Worksite at 7:00 a.m.

79.     Plaintiff Hernandez was required to clock-in at the turnstiles immediately upon his arrival at the Worksite.

80.     Before his shift began at 7:30 a.m., Plaintiff Hernandez was required to fill out paperwork concerning his work assignments for that day, which were a part of his normal job duties.

81.     Defendants had knowledge that Plaintiff Hernandez performed his normal job duties prior the commencement of his scheduled shift.

82.     Plaintiff Hernandez was not compensated for his time spent working on the bus and for his "prestart" work.

**ORIGINAL COMPLAINT**

83.    Accordingly, Plaintiff Hernandez was required to work "off-the-clock."

84.    The "off-the-clock" work performed by Plaintiff Hernandez was not incidental to his job duties.

85.    As a result of being forced to work "off-the-clock" Plaintiff Hernandez worked more than his scheduled seventy-two (72) hours per workweek.

86.    Plaintiff Hernandez was unlawfully only compensated the overtime premium for his "on-the-clock" hours worked over forty (40) per workweek.

87.    As a result of being forced to work "off-the-clock," Plaintiff Hernandez did not receive the overtime premium of one and a half (1 ½) times his regular hourly rate for all hours worked in excess of forty (40) hours per workweek in violation of the FLSA.

88.    In or around September 2018, Plaintiff Hernandez complained to his supervisors of Defendants' unlawful withholding of compensation for his "prestart" work, but Defendants did not take any remedial action.

## FLSA COLLECTIVE ACTION ALLEGATIONS

89.    Plaintiffs seek to bring this suit as a collective action pursuant to 29 U.S.C. § 216(b) on their own behalf as well as those in the following collective:

> All persons employed by Defendants during the past three (3) years through the final date of disposition of this action, who are or were required to work in excess of forty (40) hours per workweek without compensation at the statutorily required rate of one and a half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek.

90.    At all relevant times, Plaintiffs were similarly situated to all such individuals in the FLSA Collective[1] because while employed by Defendants, Plaintiffs and all FLSA Plaintiffs performed their duties, were subject to the same laws and regulations, were paid in the same or substantially similar

---

[1] Hereinafter referred to as the "FLSA Plaintiffs".

**ORIGINAL COMPLAINT**

manner, were paid the same or similar rate, and were required to work "off-the-clock" without compensation at a rate of one and a half (1 ½) times their regular hourly rate for all hours worked in excess of forty (40) hours per workweek.

91.     Defendants are and have been aware of the requirement to pay Plaintiffs and the FLSA Plaintiffs at a rate of one and a half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek, yet willfully choose not to.

92.     The members of the proposed FLSA Collective are readily discernable and ascertainable. All FLSA Plaintiffs' contact information is readily available in Defendants' records. Notice of this collective action can be made as soon as the Court determines.

93.     The members of the FLSA Collective are too numerous to join in a single action, necessitating collective recognition.

94.     All questions relation to Defendants' violation of the FLSA share a common factual basis with Plaintiffs. No claims under the FLSA relating to Defendants' failure to pay minimum wage for all hours worked are specific to Plaintiffs and the claims asserted by Plaintiffs are typical of those of the proposed collective.

95.     Plaintiffs will fairly and adequately represent the interests of the FLSA Plaintiffs and has no interests conflicting with those of the proposed collective.

96.     A collective action is superior to all other methods and is necessary in order to fairly and completely litigate the claims of members of the proposed collective under the FLSA.

97.     Plaintiffs' attorneys are familiar and experienced with class action litigation as well as employment and labor law litigation.

98.     The public will benefit from the case being brought as a collective action because doing so will serve the interests of judicial economy by saving the Court's time and efforts and reducing a

**ORIGINAL COMPLAINT**

multitude of claims to a single litigation. Prosecution of separate actions by individual FLSA Plaintiffs creates a risk for varying results based on identical fact patterns as well as disposition of interests of members of the proposed collective without their knowledge or contribution.

99.     The questions of law and fact are nearly identical for all FLSA Plaintiffs and therefore proceeding as a collective action is ideal. Without judicial resolution of the claims asserted on behalf of the members of the proposed collective, Defendants' continued violations of the FLSA will undoubtedly continue.

## CAUSES OF ACTION

### COUNT 1
**Violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, Made by Plaintiffs on Behalf of All FLSA Plaintiffs**

100.     Plaintiffs and the FLSA Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

101.     Throughout the period covered by the applicable statute of limitations, Plaintiff and other FLSA Plaintiffs were required to work and did in fact work in excess of forty (40) hours per workweek.

102.     Throughout the period covered by the applicable statute of limitations, Defendants knowingly failed to pay Plaintiff and the FLSA Plaintiffs the statutorily required overtime rate for all hours worked in excess of forty (40) hours per workweek by requiring them to work "off-the-clock."

103.     Defendants' conduct was willful and lasted for the duration of the relevant time periods.

104.     Defendants' conduct was in violation of the Fair Labor Standards Act.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs employed by Defendants, demand judgment against Defendants as follows:

**ORIGINAL COMPLAINT**

A.      At the earliest possible time, Plaintiffs should be allowed to give notice of this collective action, or the Court should issue such notice, to all members of the purported Collective, defined herein. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper minimum wages;

B.      Designation of Plaintiffs as representatives of the FLSA Collective defined herein, and Plaintiffs' counsel as Collective Counsel;

C.      Equitable tolling of the FLSA statute of limitations as a result of Defendants' failure to post requisite notices under the FLSA;

D.      Certification of this action as a collective action pursuant to 29 U.S.C. § 216(b) for the purposes of the claims brought on behalf of all proposed FLSA collective members under the FLSA;

E.      Demand a jury trial on these issues to determine liability and damages;

F.      Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

G.      A judgment declaring that the practices complained of herein are unlawful and in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*.

H.      All damages which Plaintiffs and FLSA Plaintiffs have sustained as a result of Defendants' conduct, including back pay, liquidated damages, general and special damages for lost compensation and job benefits they would have received but for Defendants' improper practices;

I.      An award to Plaintiffs and FLSA Plaintiffs of pre-judgment interest at the highest level rate, from and after the date of service of the initial complaint in this action on all unpaid wages from the date such wages were earned and due;

**ORIGINAL COMPLAINT**

J.      An award to Plaintiffs and FLSA Plaintiffs representing Defendants' share of FICA, FUTA, state unemployment insurance and any other required employment taxes;

K.      An award to Plaintiffs and FLSA Plaintiffs for the amount of unpaid wages, unpaid overtime, including interest thereon, and penalties, including liquidated damages subject to proof;

L.      Awarding Plaintiffs and FLSA Plaintiffs their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs;

M.      Awarding pre-judgment and post-judgment interest, as provided by law; and

N.      Granting Plaintiffs and FLSA Plaintiffs other and further relief as this Court finds necessary and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by this Complaint.

Dated:   February 15, 2019                    /s/ Philip Bohrer

<div style="margin-left:40%">

Philip Bohrer
Louisiana State Bar No. 14089
phil@bohrerbrady.com
**Bohrer Brady LLC**
8712 Jefferson Highway
Suite B
Baton Rouge, LA  70809
Telephone:  (225) 925-5297

Jay D. Ellwanger
*pro hac vice admission pending*
Texas State Bar No. 24036522
jellwanger@equalrights.law
Esha Rajendran (pro hac vice to be filed)
Texas State Bar No. 24105968
erajendran@equalrights.law
**Ellwanger Law LLLP**
8310-1 N. Capital of Texas Hwy
Suite 190

</div>

**ORIGINAL COMPLAINT**

14

Austin, Texas 78731
Telephone:  (737) 808-2260
Facsimile:  (737) 808-2262

James A. Vagnini
*pro hac vice admission pending*
jvagnini@vkvlawyers.com
Alexander M. White
*pro hac vice admission pending*
awhite@vkvlawyers.com
**Valli Kane & Vagnini LLP**
600 Old Country Road, Suite 519
Garden City, New York 11530
Telephone: (516) 203-7180
Facsimile:  (516) 706-0248


**ATTORNEYS FOR PLAINTIFFS**

**ORIGINAL COMPLAINT**